**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | |
| an Arizona corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: |
| | ) | |
| M.W. CARLSON LTD, an Illinois corporation, | ) | |
| MARK W. CARLSON, individually, DONALD | ) | |
| ("JIM") CROCKFORD, individually, and | ) | |
| MARGARET ("MEG") CROCKFORD, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Nautilus Insurance Company ("Nautilus"), by and though its counsel of record, and for its Complaint against Defendants M.W. Carlson Ltd. ("Carlson Ltd."), Mark W. Carlson, Donald ("Jim") Crockford and Margaret ("Meg") Crockford (collectively the "Crockfords"), alleges, states and avers:

## PARTIES, JURISDICTION AND VENUE

1.      Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1).

2.      Plaintiff, Nautilus, is a corporation organized under the laws of Arizona with its principal place of business in Scottsdale, Arizona.

3.      Defendant, Carlson Ltd., is a corporation organized under the laws of the State of Illinois with its principle place of business in Cook County, Illinois.

4.      Defendant, Mark W. Carlson, is a citizen of the State of Illinois.

4.      Defendant, Donald ("Jim") Crockford, is a citizen of the State of Illinois. Donald ("Jim") Crockford is joined in this suit as a necessary party defendant.

5.      Defendant, Margaret ("Meg") Crockford, is a citizen of the State of Illinois.  Margaret ("Meg") Crockford is joined in this suit as a necessary party defendant.

6.      Nautilus brings this action to obtain a declaratory judgment finding that Nautilus has no duty to defend and, therefore, no duty to indemnify M.W. Carlson, Ltd. or Carlson in connection with a lawsuit filed in the Circuit Court of Cook County, Illinois under the caption, *Donald ("Jim") Crockford and Margaret ("Meg") Crockford v. M.W. Carlson, Ltd. and Mark W. Carlson, individually*, Case No. 09 CH 16368 (the "Crockford Lawsuit").  A true and correct copy of the First Amended Complaint filed in the Crockford Lawsuit is attached hereto and incorporated herein as Exhibit A.

7.      The Crockfords' First Amended Complaint seeks damages in excess of $200,000.

8.      Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff, Nautilus, on the one hand, and all Defendants, on the other hand; and (b) the amount in controversy, including the potential costs of both defending and indemnifying M.W. Carlson,  Ltd. and Carlson, substantially exceeds $75,000.

9.      Venue is appropriate under 28 U.S.C. § 1391 because many of the acts – *i.e.*, the making of the insurance contract at issue and the alleged damage to the building at issue in the underlying suit – which form the basis of this action occurred in the Northern District of Illinois.

## THE CROCKFORD LAWSUIT

10.      On January 4, 2010, a First Amended Complaint was filed in the Crockford Lawsuit.

11.     The First Amended Complaint alleges, generally, that Carlson – the general contractor and developer of a home sold to the Crockfords – failed to properly build the home, resulting in water flooding the backyard and basement of the Crockfords' home.

12.     The First Amended Complaint further alleges that that the interior drain tile system and storm sewer were clogged with silt.

13.     The First Amended Complaint further alleges that the water infiltration caused the following construction defects: (a)  rotting trim; (b) peeling paint; (c) attic venting deficiencies; (d) attic mold; (e) buckled plywood roof sheathing; (f) damaged shingles; and (g) buckling drywall tape joints.

14.     The First Amended Complaint further alleges that Carlson performed its work in a deficient and defective manner including, but not limited to:

> a.     plywood roof sheathing has buckled upward away from the top of the roof rafters at several locations, such that gaps of different depths are present between the top of the roof rafters and the underside of the plywood sheathing, creating a wavy appearance;
>
> b.     dark stains, which appear to be mold or mildew, are present on the underside of the plywood sheathing at several locations in the attic indicating water infiltration and/or condensation;
>
> c.     roofing nails that penetrated the roof sheathing are generally corroding, apparently due to high levels of moisture in the attic;
>
> d.     there is an inadequate amount of venting on the north side of the house at the west end resulting in the formation of mold or mildew in the attic;
>
> e.     paint is peeling off the exterior wood trim and siding;

f.      the wood trim was not properly primed and is rotting from the back face outward;

g.      there is a deficiency in the gutter installation on the north wall at the west side of the house that is causing the water to overflow the gutter at the east end, resulting in peeling paint and wood rot;

h.      there are areas where mold or mildew has formed on the wood trim due to the inadequacy of the paint;

i.      the concrete segmental unit areawell retaining walls located toward the north end of the east foundation have significantly settled and are collapsing inward as a result of excessive soil pressure related to high water pressure and saturated soil conditions related to the ground surface water conditions and loss of support related to the supporting silt being washed into the perimeter drain system;

j.      there are areas in the house where the drywall tape joints are buckling or have torn due to excessive moisture in the attic caused by improper attic ventilation;

k.      a substantial portion of the rear yard floods because the original grading was improperly designed and/or constructed;

l.      the perimeter drain system and sump pit are filling with silt because the footings and basement are located too low in relation to the underground creek bed which results in extensive wear and tear on the sump pumps and need to constantly remove the silt from the perimeter drain system and sump pit; and

m.   the basement floods due to water running over the top of the areawells and entering at the basement windows and water is pushed up through the cracks and joints in the basement floor slab.

15.   The First Amended Complaint further alleges that as a result of Carlson's failure to properly grade, excavate, roof, paint and ventilate the Property, the backyard and basement flood, and moisture has penetrated the interior and exterior of the Property causing mold or mildew to form and grow and penetrate the inside of the Property.

16.   The First Amended Complaint further alleges that the Crockfords have incurred, and are incurring, substantial expenses in their attempt to make the Property flood free and repair the defective and deficient construction performed by Carlson and that, additionally, the Crockfords' ability to sell their home in the future is greatly diminished or nonexistent.

17.   The First Amended Complaint alleges water infiltration occurred in August 2002, February 2005, July 2008, August 2008 and September 2008.

18.   Count I of the Amended Complaint is for rescission, which has been dismissed with prejudice and re-pled only for the purposes of appeal.

19.   Count II of the Amended Complaint is for violations of the Consumer Fraud and Deceptive Business Practice Act.  Count II alleges that Carlson's misrepresentations and violations of the Act were knowing, intentional, willful, wanton, outrageous and in reckless indifference for the Crockfords' rights.  The Crockfords have reserved their rights to seek punitive damages on this basis.

20.   Count III of the Amended Complaint is for common law fraud, alleging that Carlson knowingly, intentionally, and maliciously kept silent about the subsurface water problem, in total

disregard of the Crockfords' rights.  Again, the Crockfords reserved their rights to seek punitive damages.

21.     The First Amended Complaint also contains counts for negligence (count IV), breach of the implied warranty of good workmanship (count V), breach of contract (count VI), and a count which seeks to pierce the corporate veil of M.W. Carlson, Ltd (count VII).

**NAUTILUS POLICIES**

22.     Nautilus issued Commercial Lines Policy Nos. NC 462709 and NC 590510 (collectively, the "Nautilus Policies") to M.W. Carlson, Ltd.  True and correct copies of the Nautilus Policies are attached hereto as Exhibit B and Exhibit C, respectively.

23.     The Nautilus Policies are effective from August 30, 2005 to August 30, 2006 and from August 30, 2006 to August 30, 2007, respectively.

24.     The Each Occurrence Limit for both policies is $1,000,000 Each Occurrence and the General Aggregate Limit is $2,000,000.

25.      The Nautilus Policies contain the following insuring agreement:

   **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

   **b.**     This insurance applies to "bodily injury" and "property damage" only if:

   **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)**     The "bodily injury" or "property damage" occurs during the policy period….

26.     The Nautilus Policies contains the following relevant definitions:

4815-7547-0342.1

6

**8.**   "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.**   It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**   You have failed to fulfill the terms of a contract or agreement:

if such property can be restored to use by:

    **a.**   The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.**   Your fulfilling the terms of the contract or agreement.

***

**13.**   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

***

**16.**   "Products-completed operations hazard":

    **a.**   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)**   Products that are still in your physical possession; or

        **(2)**   Work that has not yet been completed or abandoned.   However, "your work" will be deemed completed at the earliest of the following times:

            **(a)**   When all of the work called for in your contract has been completed.

            **(b)**   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)**   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it….

\*\*\*

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

       **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

       **(2)**    The providing of or failure to provide warnings or instructions.

27.    The Nautilus Policies contains the following exclusions:

This insurance does not apply to:

**a.**    **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

          \*\*\*

**j.**    **Damage To Property**

"Property damage" to:

          \*\*\*

    **(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    **(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

          \*\*\*

**l.**    **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**    "Your product";

**(2)**    "Your work"; or

**(3)**    "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

28.    The Nautilus Policies contain an endorsement with the following exclusion:

**EXCLUSION – MICROORGANISMS, BIOLOGICAL ORGANISMS, BIOAEROSOLS OR ORGANIC CONTAMINANTS**

The following exclusion is added to EXCLUSIONS:

This insurance does not apply to:

1.    Liability, injury or damage of any kind, including but not limited to "bodily injury", "property damage", or "personal and advertising injury" arising out of, related to, caused by or in any way connected with the exposure to, presence of, formation of, existence of or

actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms, bioaerosols or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

\*\*\*

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging injury or damage of any kind, including but not limited to "bodily injury", "property damage", or "personal and advertising injury" to which this endorsement applies.

## COUNT I
### (Declaratory Judgment – No Duty to Defend or Indemnify)

29.    Nautilus incorporates by reference paragraphs 1-28 above as if fully stated herein.

30.    The First Amended Complaint in the Crockford Lawsuit does not allege "property damage" caused by an "occurrence," as those terms are defined in the Nautilus Policies.  The alleged damage is limited to M.W. Carlson's and Carlson's work product (*i.e.*, the home).

31.    Even if "property damage" caused by an "occurrence" occurred, it occurred either before the inception date of the first Nautilus Policy or after the expiration of the last Nautilus Policy.

32.    To the extent the underlying complaint alleges "property damage" caused by mold, the Microorganisms, Biological Organisms, Bioaerosols or Organic Contaminants Exclusion precludes coverage.

33.    One or more of the exclusions contained in Paragraph 27, above, preclude a duty to defend or indemnify by Nautilus in connection with the Crockford Lawsuit.

34.    The Nautilus Policies do not potentially or actually cover the claims against M.W. Carlson, Ltd. and Carlson in the underlying complaint.

35.     Nautilus has no duty to defend or indemnify M.W. Carlson, Ltd. or Carlson in connection with the Crockford Lawsuit.

36.     An actual controversy exists between Nautilus, on the one hand, and M.W. Carlson, Ltd. and Carlson, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

WHEREFORE, Plaintiff NAUTILUS INSURANCE COMPANY respectfully requests this Honorable Court to declare and adjudge the controversy as follows:

A.     Declare that Nautilus has no duty to defend M.W. Carlson, Ltd. or Carlson in the underlying lawsuit;

B.     Declare that Nautilus has no duty to indemnify M.W. Carlson, Ltd. or Carlson for any loss or damages arising from the underlying lawsuit;

C.     Grant any other relief that this Honorable Court deems just and equitable under the circumstances, including the award of costs.

Respectfully submitted,

Nautilus Insurance Company

By:  __s/  Perry M. Shorris_____
            One of Its Attorneys

Perry M. Shorris, Esq. (ARDC No.: 6216843)
Kelly M. Ognibene, Esq. (ARDC No.: 6297327)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois  60661
Telephone:  312.345.1718
Facsimile:  312.345.1778